# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ERICA HIGGINBOTHAM,  )
    Plaintiff,  )
                         )    Civil Action No. 18-747
    v.  )
                         )    Magistrate Judge Robert C. Mitchell
LIBERTY INSURANCE CORPORATION, )
    Defendant.  )

## OPINION

Presently pending before the Court is a motion for judgment on the pleadings (ECF No. 10), with brief in support (ECF No. 11), filed by the Liberty Insurance Corporation (Liberty). Plaintiff Erica Higginbotham (Higginbotham) has filed a brief in opposition (ECF No. 13). Liberty has filed a reply brief (ECF No. 14) and Higginbotham has filed a sur-reply brief (ECF No. 15-1). For the reasons that follow, the Court will deny Liberty's motion.

**Factual History**

<u>The Underlying Lawsuit</u>

In 2001, Higginbotham became acquainted with two minor children, E.C. and S.C. (ECF No. 12-4, Ex. A). Higginbotham babysat for the children on multiple occasions, often at her in-laws' home (<u>Id</u>). In November of 2014, Higginbotham's father-in-law, David, was convicted of sexually abusing E.C. and S.C. while the children were in Higginbotham's care (<u>Id</u>.) In early 2015, a complaint in civil action was brought against Higginbotham, David, and Higginbotham's mother-in-law, Kathy, in the Allegheny County Court of Common Pleas, seeking damages for physical and psychological injuries related to the sexual abuse perpetrated by David (<u>Id</u>.) In particular, Count III of the complaint raised claims of negligence against Higginbotham and Kathy

for failing to supervise E.C. and S.C while in the presence of David, and failing to recognize the risk he posed to the children (Id.)

The Liberty Policies

From 2011 to 2013, Higginbotham was the policyholder and named insured on two homeowners' insurance policies[1] issued by Liberty. (ECF No. 12-2, Ex. A, B). Those policies required Liberty to indemnify and defend Higginbotham "for damages because of 'bodily injury' or 'property damage' caused by an 'occurrence'" as defined by the policies. See id. at SECTION II – LIABILITY COVERAGES; COVERAGE E – Personal Liability.[2] However, those obligations were subject to certain enumerated exclusions.

SECTION II – EXCLUSIONS

1. Coverage E – Personal Liability and Coverage F – Medical Payments to Others do not apply to "bodily injury" or "property damage":

   a. Which is expected or intended by one or more "insureds";

   b. Arising out of or in connection with a "business" engaged in by an "insured." This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owe, or implied to be provided because of the nature of the "business";

   * * *

---

[1] The LibertyGuard Deluxe Homeowners policies at issue are H37-288-654055-701 6 (HO Policy 1), which was in effect from December 4, 2011 to December 4, 2012, and H37-288-654055-702 6 (HO Policy 2), which is a renewal of the first policy and was in effect from December 2012 to December 4, 2013 (ECF No. 12-2, Ex. D).

[2] The policies define "bodily injury" as "bodily harm, sickness or disease, including required care, loss of services and death those results" (ECF No. 12-2, Ex. A, B). "Occurrence" means "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in … 'bodily injury'; or … 'property damage'" (Id.)

k. Arising out of sexual molestation, corporal punishment or physical or mental abuse.

(Id.)

In addition, the HO Policies each contained endorsements, which changed Exclusion 1.a. as follows.

HO Policy 1:

SECTION II - EXCLUSIONS
Item 1.a. under Coverage E - Personal Liability and Coverage F - Medical Payments to Others is amended as follows:

Which is expected or intended by the "insured", even if the resulting "bodily injury" or "property damage"

(1) is of a different kind, quality, or degree than initially expected or intended; or
(2) is sustained by a different person, entity, real or personal property, than initially expected or intended.

However, this exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

HO Policy 2:

SECTION II - EXCLUSIONS
Item 1.a. under Coverage E - Personal Liability and Coverage F - Medical Payments to Others is amended as follows:

For "bodily injury" or "property damage" that results, or may reasonably be expected to result, from the intentional or criminal acts or omissions of an "insured," even if it

(1) is of a different kind, quality, or degree than initially expected or intended; or
(2) is sustained by a different person, entity, real or personal property, than initially expected or intended.

However, this exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

(Id.)

Finally, the HO Policies contain an endorsement for a Home Day Care Business, form HO 04 96 04 91, which provides, in relevant part, as follows.

> If an "insured" regularly provides home day care services to a person or persons other than "insureds" and receives monetary or other compensation for such services, that enterprise is a "business." Mutual exchange of home day care services, however, is not considered compensation. The rendering of home day care services by an "insured" to a relative of an "insured" is not considered a "business." Therefore, with respect to a home day care enterprise which is considered to be a "business," this policy:
>
> 1. Does not provide Section II – Liability Coverages because a "business" of an "insured" is excluded under exclusion 1.b. of Section II – Exclusions[.]

(Id.)

By letter dated April 23, 2015, Liberty informed Higginbotham that it would provide her with a defense to the underlying lawsuit "pursuant to a full reservation of rights" (ECF No. 12-2, Ex. D). A second reservation of rights letter confirming its coverage position was sent by Liberty to Higginbotham on December 14, 2015 (Id.) Liberty explained its coverage position as follows.

> Based on the allegations in the complaint, Liberty will defend you, because the [underlying l]awsuit potentially seeks covered damages because of "bodily injury." However, Liberty disclaims any obligation to indemnify you under the HO Policies to the extent the alleged "bodily injury" was not caused by an "occurrence."
>
> Liberty also disclaims any obligation to indemnify you under the HO Policies to the extent Exclusion 1.a., the expected/intended exclusion, applies. …
>
> Liberty also disclaims any obligation to indemnify you under the HO Policies to the extent Exclusion 1.b., the "business" exclusion, applies.
>
> Liberty also disclaims any obligation to indemnify you under the HO Policies to the extent the alleged "bodily injury" arose out of "sexual molestation, corporal punishment or physical or mental abuse…" The allegations in the complaint of sexual molestation of the plaintiff minor children by David Higginbotham potentially fall within this exclusion.
>
> Liberty maintains that any negligence on your part, as alleged in the complaint, should it be proven, will constitute one "occurrence" under the HO

4

> Policies such that a single limit of liability would apply, to the extent it is determined that coverage applies to the claims.
>
> In addition, to the extent you were providing home day care services in exchange for monetary or other compensation and possibly operating a "business" doing so, the Home Day Care Business endorsement may apply, which eliminates liability coverage for such activities. Liberty [] disclaims any obligation to indemnify you under the HO Policies to the extent you were engaged in any kind of "business" with respect to your providing care to S.C. and E.C.
>
> The HO Policies also would not respond to any "bodily injury" that occurred outside the period the HO Policies were in effect.

(Id. at 4-5).

The letter included the name of the attorney selected to represent Higginbotham and further explained,

> Please be advised that our provision of a defense to you in this Lawsuit is subject to our right to deny coverage (including any obligation to indemnify) to you for any resulting settlement or judgment entered against you, as well as our right to contest the existence of coverage in a declaratory judgment action. Among other things, we reserve the right to withdraw from your defense in the event that it is determined that we have no obligation to defend you in this lawsuit. Under Pennsylvania law, you have the right to decline this tender of defense and furnish your own defense, either *pro se* or through independent counsel retained at your expense. If you choose that option and should coverage be found to exist, you may recover from us the reasonable costs of defense and reasonable cost of settlement up to a single $300,000 limit of liability, to the extent that those costs are determined to be fair, reasonable and non-collusive. Should you wish to discuss this right, please contact me as soon as possible.
>
> The Plaintiffs have demanded punitive damages against you in the complaint. It is against Pennsylvania public policy for an insurer to indemnify an insured for punitive damages. Liberty [] will not indemnify you for punitive damages.
>
> Please be advised that the HO Policies impose on you a duty to cooperate with us in investigating, settling or defending this matter and to assist us in enforcing rights that you may have against any other carrier. You are obligated to provide notice to any other primary, excess, umbrella or other insurance carriers whose coverage may be implicated by this Lawsuit and to let us know who these carriers are.

5

> We understand you were previously insured with other carriers and, upon information and belief, you have notified them of the Lawsuit and they are providing you with a defense. We reserve the right to seek contribution from these other insurers for any fees and costs we incur in connection with the defense afforded to you in this matter, and, to the extent coverage exists, any indemnity owed to you, subject to the terms, conditions, and limitations of the HO Policies.
>
> Further, we reserve the right to seek reimbursement of defense costs paid in this action in whole or in part to the extent permitted by applicable law. In addition, we reserve the right to intervene in the Lawsuit for purposes of undertaking discovery and submitting proposed special verdict questions to differentiate covered from non-covered claims and/or asserting that no coverage exists under the HO Policies.
>
> Liberty's position is premised upon the allegations in the complaint. If the complaint is amended, please immediately forward a copy of the amended complaint to us for review. In addition, please forward any information that you believe has bearing on Liberty's coverage determination. Liberty reserves the right to supplement, amend or change its coverage position based on any additional information or any amended complaint submitted to it.
>
> Liberty does not intend by this letter to waive any policy provisions or defenses and specifically reserves its right to assert such additional policy defenses at any time. While we have attempted to address all of the coverage considerations related to this matter, Liberty reserves all rights under applicable law and the HO Policies. This letter should not be construed as a waiver of any of the possible coverage defenses afforded by the HO Policies or applicable law and it should not be construed as creating an estoppel to assert such defenses. Finally, Liberty reserves the right to file an action for a declaratory judgment so as to secure a determination from a court concerning [its] the rights and responsibilities under the HO Policies.

(ECF No. 12-2, Ex. D at 5-6).

The Declaratory Judgment Actions

On January 8, 2016, Liberty filed a complaint for declaratory judgment[3] against Higginbotham in the United States District Court for the Western District of Pennsylvania (federal action), seeking judicial determination of the following.

---

[3] <u>Liberty Insurance Corporation v. Higginbotham, *et al*.</u>, 16-cv-00038 (W.D.Pa. 2016).

1. Whether the business exclusion and home day care exclusion contained in the HO Policies precluded coverage to Higginbotham "for the alleged sexual molestation [by David] and resulting injuries" to E.C. and S.C.;

2. Whether Liberty had a continuing duty to defend Higginbotham in the underlying lawsuit;

3. Whether Liberty had a duty to indemnify Higginbotham in the underlying lawsuit; and

4. Whether Liberty was entitled to terminate its defense of Higginbotham in the underlying lawsuit.

(ECF No. 10-4).

Although Liberty had provided her an attorney in the underlying lawsuit, Higginbotham hired private counsel to represent her in the federal action. On March 16, 2016, Higginbotham, through her new counsel, moved to dismiss the federal action. Meanwhile, on March 22, 2016, Higginbotham filed a complaint in the Court of Common Pleas of Allegheny County (state action) seeking declaration that Liberty had a duty to defend her in the underlying lawsuit. By memorandum opinion and order dated March 24, 2016, the District Court granted Higginbotham's motion to dismiss and declined jurisdiction over the federal action in light of the parallel state court action, and the federal action was closed.

Liberty filed a counterclaim for declaratory judgment in the state action on June 17, 2016, raising exclusion k (relating to damages arising out of, *inter alia*, sexual molestation) as a basis for denying coverage to Higginbotham. On December 28, 2017, Liberty filed a motion for judgment on the pleadings in the state action. This motion was fully briefed, and oral argument was heard. By order dated March 20, 2017, the trial court denied Liberty's motion. On May 3, 2017, at Liberty's request, the order was modified to clarify the legal basis for the court's denial. Liberty filed an appeal with the Pennsylvania Superior Court, which was quashed by order dated August

3, 2017. Thereafter, a settlement was reached in the underlying litigation, a release was executed on December 22, 2017, and the state action was dismissed as moot (ECF No. 12-15).

**Procedural History**

Higginbotham initiated the case at issue by filing a complaint in civil action in the Allegheny County Court of Common Pleas on May 14, 2018 (ECF No. 1-2). The complaint raises one count of contractual bad faith and one count of statutory bad faith pursuant to 42 Pa.C.S. § 8731. On June 6, 2018, Defendant removed the matter to this Court, and on June 14, 2018, an answer to the complaint was filed (ECF Nos. 1, 4). On August 31, 2018, Defendant filed the instant motion (ECF No. 10), arguing that it was entitled to judgment on the pleadings because it did not act in bad faith (1) by filing the federal action and a counterclaim in the state action while providing Higginbotham with a defense in the underlying lawsuit, or (2) in its handling of the issues surrounding the underlying litigation (ECF No 10, pg. 9-14). In her response, Higginbotham argues that Liberty's issuance of a "manipulative" reservation of rights and use of the courts to delay resolution of the underlying litigation in order to "improve its negotiating position," was done in bad faith, and caused her to suffer emotional distress and bodily harm and to incur legal expenses to defend herself against Liberty's unfounded declaratory judgment actions (ECF No. 13, pg. 1). The motion has been fully briefed and is ripe for disposition. This Court has jurisdiction under 28 U.S.C. § 1332.

**Standard of Review**

Pursuant to Federal Rule of Civil Procedure 12(c), judgment on the pleadings will be granted only if "the movant clearly establishes there are no material issues of fact, and he or she is

entitled to judgment as a matter of law." Sikirica v. Nationwide Insurance Company, 416 F.3d 214, 220 (3d Cir.2005) (citing Society Hill Civic Association v. Harris, 632 F.2d 1045, 1054 (3d Cir.1980)). A motion for judgment on the pleadings based on the defense that the plaintiff has failed to state a claim is analyzed under the same standards that apply to a Rule 12(b)(6) motion. Zimmerman v. Corbett, 873 F.3d 414, 417–18 (3d Cir. 2017), cert. denied, 138 S. Ct. 2623 (2018) (footnotes omitted). Accordingly, in considering a motion for judgment on the pleadings, a court must accept all of the allegations in the pleadings of the party against whom the motion is addressed as true and draw all reasonable inferences in favor of the non-moving party. (Id.)

**Discussion**

In her amended complaint, Higginbotham raises claims of contractual and statutory bad faith arising from alleged breaches of the HO Policies by Liberty.

1. Contractual Bad Faith

It is well-settled that "[a]n insurance company must act with the utmost good faith and fair dealing toward its insured, and give the interests of its insured the same faithful consideration that it gives its own interests." Charter Oak Ins. Co. v. Maglio Fresh Food, 45 F. Supp. 3d 461, 466 (E.D. Pa. 2014), aff'd sub nom. Charter Oak Ins. Co. v. Maglio Fresh Foods, 629 F. App'x 239 (3d Cir. 2015). "Pennsylvania law recognizes a claim in contract for an insurer's breach of its fiduciary obligations to its insured, and an insured's right to recover compensatory damages under that claim for injuries sustained as a result of that breach." Wolfe v. Allstate Prop. & Cas. Ins. Co., 790 F.3d 487, 497 (3d Cir. 2015). A clear and convincing evidence standard is applied to

9

evaluation of such claims. See McMahon v. Med. Protective Co., 92 F. Supp. 3d 367, 380 (W.D. Pa. 2015) (citing DeWalt v. Ohio Casualty Insurance Co., 513 F Supp.2d 287 (E.D.Pa. 2007).

Higginbotham alleges that Liberty breached its contractual duty to her by

   a. Undertaking to provide her with a with a defense "but actively conducting itself inconsistently with the duty to defend";

   b. Leveraging itself into an improved bargaining position with underlying claimants to her detriment;

   c. Handling the claims to as to cause expense and severe emotional distress;

   d. Recklessly attacking the insurance coverage that it promised to provide;

   e. Undermining the security and peace of mind that was promised to her by the policy;

   f. Asserting the sexual abuse exclusion as a basis to avoid the duty to defend when it was unwarranted;

   g. Taking an appeal from adverse rulings when an appeal was unwarranted;

   h. Failing to conduct a prompt and adequate investigation of its coverage obligations;

   i. Failing to adopt or follow reasonable standards for investigation and analysis of its policy obligations; and

   j. Failing to adequately protect her from the conflict it created by its claim handling strategy.

(ECF No. 1-2, ¶ 50).

This Court is mindful that Pennsylvania Supreme Court "precedent allows the insurer to defend subject to a reservation of rights, which permits the insurer to control the defense from the beginning of the litigation while still alerting the insured to the potential lack of coverage." Babcock & Wilcox Co. v. Am. Nuclear Insurers, 131 A.3d 445, 456 (Pa. 2015) (quoting Jerry's Sport Ctr., Inc., 2 A.3d at 540-545). Further, applicable caselaw encourages insurers to file

declaratory judgment actions "to eliminate the uncertainty regarding its responsibility for continued defense and ultimately for indemnity coverage." (Id.)

However, our District Courts, analyzing Pennsylvania and federal contractual bad faith cases, have denied the insurance companies' motions for summary judgment on the basis that

> allegations of a failure to conduct a complete and thorough investigation of the facts giving rise to the claim, or the law supporting it, the refusal to enter into good faith settlement negotiations or the conduct of "surface" negotiations undertaken with no genuine intent to find a basis for settlement, the rejection without counterproposal of all offers made by the third party for settlement, the filing and pursuit of actions for declaratory judgment without a reasonable evidentiary basis for doing so, if persisted in for an unreasonable period of time, will state a cause of action for breach of contract and for bad faith even if ultimately, after the insured has been prejudiced by the insurer's conduct delaying resolution of the claim against it, the insurer pays the policy limits prior to the entry of a verdict.

Bodnar v. Nationwide Mut. Ins. Co., 2013 WL 2147807, at *15 (M.D. Pa. May 16, 2013).

It is undisputed that Liberty investigated the underlying lawsuit once the complaint was brought to its attention; that Liberty provided Higginbotham with counsel, subject to reservation of rights; that Higginbotham chose to hire private counsel to litigate Liberty's declaratory judgment motions; and that the underlying lawsuit was ultimately settled. However, the thoroughness of that investigation, applicability of the exclusions relied upon by Liberty, and propriety of delaying settlement for two years to actively pursue declaratory relief against its insured present unsettled questions of fact. Viewing the evidence in the light most favorable to Higginbotham, a reasonable jury could find that Liberty's actions, in the aggregate, constituted a bad faith breach of its contractual duties to Higginbotham, and could lead that jury to return a verdict in her favor. Accordingly, Liberty's motion to dismiss as to Count I will be denied.

2. Statutory Bad Faith

Pennsylvania provides a statutory remedy for bad faith in section 8371. If an insurer has "acted in bad faith toward the insured," a court may:

(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

(2) Award punitive damages against the insurer.

(3) Assess court costs and attorney fees against the insurer.

42 Pa.C.S. § 8371.

Section 8371 does not define "bad faith," but we have predicted that the Pennsylvania Supreme Court would follow the definition of bad faith, and test for liability, set out by the Pennsylvania Superior Court in Terletsky v. Prudential Property & Casualty Insurance Co., [] 649 A.2d 680 (Pa. Super. 1994). See Nw. Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 137 (3d Cir.2005). Terletsky defined "bad faith" as

> any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (i.e., good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.

649 A.2d at 688 (quoting Black's Law Dictionary 139 (6th ed.1990)). To recover under section 8371, a plaintiff must show by clear and convincing evidence that the insurer did not have a reasonable basis for denying benefits under the policy and that the insurer knew or recklessly disregarded its lack of reasonable basis in denying the claim. Id.

\* \* \*

[T]he focus in section 8371 claims cannot be on whether the insurer ultimately fulfilled its policy obligations, since if that were the case then insurers could act in bad faith throughout the entire pendency of the claim process, but avoid any liability under section 8371 by paying the claim at the end.... [T]he issue in connection with section 8371 claims is the manner in which insurers discharge their duties of good faith and fair dealing during the pendency of an insurance claim, not whether the claim is eventually paid.

[Berg v. Nationwide Mut. Ins. Co., 44 A.3d 1164, 1178 (Pa. Super. 2012)] (citing Toy v. Metro. Life Ins. Co., 593 Pa. 20, 928 A.2d 186, 199 (2007)). The policy behind section 8371—deterring insurance companies from engaging in bad faith

> practices—is furthered by allowing a statutory bad faith claim to proceed even where the insured has alleged no compensatory damages resulting from that conduct. See March v. Paradise Mut. Ins. Co., [] 646 A.2d 1254, 1256 (Pa. Super. 1994) (explaining that section 8371 "was promulgated to provide additional relief to insureds and to discourage bad faith practices of insurance companies").

Wolfe v. Allstate Prop. & Cas. Ins. Co., 790 F.3d 487, 498–99 (3d Cir. 2015)

In the present motion, Liberty maintains the coverage position outlined in its reservation of rights letters and argues that it owed no duty to defend Higginbotham in the underlying litigation because the allegations against her sounded in negligence which was directly related to the allegations of sexual abuse (ECF No. 11, pg. 12). In the alternative, Liberty argues that the existence of a "bona fide coverage issue" as to the applicability of any exclusions belies Higginbotham's argument that it acted in bad faith. (Id.)

Once more, this Court is, at this stage of the proceedings, required to view the evidence in the light most favorable to the non-moving party. As stated above, the focus of section 8371 claims is the "manner" in which the duty is discharged and not the ultimate outcome of the underlying litigation. The allegations in the pleadings demonstrate that there are outstanding material issues of fact which could lead a reasonable jury to conclude that Liberty's investigation and claim-handling was motivated by its own self-interest, and in bad faith, regardless of the fact that the claim was ultimately paid. Accordingly, Liberty's motion to dismiss as to Count II will be denied.

**Conclusion**

For the reasons set forth above, Liberty's motion for judgment on the pleadings is denied. An appropriate order follows.

DATED this 27th day of November, 2018.

BY THE COURT:

s/ Robert C. Mitchell
ROBERT C. MITCHELL
United States Magistrate Judge

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ERICA HIGGINBOTHAM,<br>    Plaintiff, | )<br>)<br>) Civil Action No. 18-747 |
| v. | )<br>)<br>) Magistrate Judge Robert C. Mitchell |
| LIBERTY INSURANCE CORPORATION,<br>    Defendant. | )<br>) |

## ORDER

AND NOW, this 27th day of November, 2018, for the reasons stated in the Opinion filed contemporaneously herewith, it is hereby ORDERED that Liberty's Motion for Judgment on the Pleadings (ECF No. 10) be and the same hereby is DENIED.

                                              /s/ Robert C. Mitchell
                                              ROBERT C. MITCHELL
                                              United States Magistrate Judge

Cc: record counsel via CM-ECF